(December 22, 1916.)

THE COTTONWOOD · WATER & LIGHT COMPANY, LTD., a Corporation, Appellant, v. ST. MICHAEL'S MONASTERY, a Corporation, Respondent.

[162 Pac. 242.]

WATER RIGHTS—FINDING OF FACTS—SUFFICIENCY OF EVIDENCE—CONCLUSIONS OF LAW—PRIORITY OF APPROPRIATION—MODIFICATION OF DECREE.

1. *Held,* that the finding of facts is fully supported by the evidence.

2. Where the court found as a fact that the grantor of the defendant was the prior appropriator and entitled to 10,000 gallons of water per day, it was error, as a conclusion of law, to give a part of such water to the plaintiff.

3. Under the provisions of sec. 3 of art. 15 of the constitution, priority of appropriation gives priority of right.

4. *Held,* under the evidence and law, that the defendant is entitled to divert from said springs 10,000 gallons of water per day.

[As to what constitutes appropriation of waters, · see note in 60 Am. St. 799.]

APPEAL from the District Court of the Second Judicial District, in and for the County of Idaho. Hon. Edgar C. Steele, Judge.

Judgment decreeing that plaintiff was entitled to a part of the water carried by the pipes of defendant during the months of July, August, September and October. *Reversed.*

W. N. Scales, for Appellant.

"When a spring furnishes a stream of water that rises to the surface, the right of appropriation attaches." (Wiel, Water Rights, 2d ed., p. 163.)

"A statutory provision that the person on whose lands spring water first rises shall have a prior right to it, if capable of being used upon his lands, does not apply to springs which form the fountain-heads of living watercourses." (*Miller v. Wheeler,* 54 Wash. 429, 103 Pac. 641, 23 L. R. A., N. S., 1065.)

"First in time, first in right," should be considered the settled law here. (*Drake v. Earhart,* 2 Ida. 750, 23 Pac. 541; *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Handy Ditch Co. v. Louden Irrigating Canal Co.,* 27 Colo. 515, 62 Pac. 847.)

The defendant bases his use of the water on what he intends to do. In the case cited below the court says: "To anticipate what he might do in the future or to permit him to make a further application of the water to a beneficial use and make proof thereof, we think, under all of the circumstances in this case, would not be warranted." (*Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073.)

J. F. Ailshie, Jas. De Haven and Jess B. Hawley, for Respondent.

It is shown by the evidence that there were no open springs and no water was flowing from any spring on the Rustemeyer place prior to Rustemeyer taking up the land and digging out and developing those springs. This was done about the year 1905. As these springs were dug out and developed to some extent, a diversion of the water was made by means of wooden troughs carrying the water for a distance of about seventy-five feet to the main watering-trough used by Rustemeyer for his livestock and general domestic purposes. This

was just as perfect and complete an appropriation of the water as if he had filed notices with the state engineer and procured a permit.    (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 38, 147 Pac. 1073.)

One who actually prepares for and diverts the waters of a stream, even though it be the entire body of water, may keep his diversion and appropriation good although he does not use the entire volume of water for a number of years, providing he is using a part thereof and is intending and preparing to and can and will eventually use and apply the whole volume of water to a beneficial use.    (*Hall v. Blackman,* 8 Ida. 272, 284, 68 Pac. 19; *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Joyce v. Rubin,* 23 Ida. 296, 130 Pac. 793; *Brown v. Newell,* 12 Ida. 166, 172, 85 Pac. 385; *Bennett v. Nourse,* 22 Ida. 249, 256, 125 Pac. 1038.)

SULLIVAN, C. J.—This action was brought to determine the priority of the use of the waters of the Rustemeyer springs, which are tributary to what is known as the south fork of the Cottonwood creek, in Idaho county.

Upon the issues joined, and after the trial of the case, the court found as follows: "That the appropriation and diversion of the waters of the said springs by the said Rustemeyer, as hereinabove found, was prior to any and all other appropriations made by the plaintiff or anyone else from the waters of said springs or the stream to which they are tributary."

Upon that and other findings, judgment was entered in favor of the respondent.    However, under the provisions of conclusion of law No. 6, the court found that during the months of July, August, September and October the defendant was required to allow the plaintiff the uninterrupted flow of water from said springs daily from 5 o'clock P. M. until 4 o'clock A. M., and that from 4 o'clock A. M. until 5 o'clock P. M. of each day during said period the defendant should have the unobstructed use of the waters of said springs.    The plaintiff appealed from the first part of said decree, and the defendant appealed from that part of the decree allowing the

plaintiff the use of said waters during the months of July, August, September and October. Hence we have an appeal by the plaintiff and a cross-appeal by the defendant.

At the outset we are met with a motion to strike the statement found in the transcript from the record, and also a motion to dismiss the appeal upon several grounds going to laches and negligence of the plaintiff in prosecuting its appeal. The court will overrule both of said motions without making further comment in regard to them.

Numerous errors are assigned, most of which go to the insufficiency of the evidence to support the findings of the court. The following facts appear from the record:

The plaintiff is a water corporation organized for the purpose of providing and supplying water to the inhabitants of the city of Cottonwood, Idaho county. The defendant is an eleemosynary corporation organized and existing for the chief purpose of conducting an educational institution and promoting religious teaching. In the year 1905, one Fred Rustemeyer entered 160 acres of land on which the springs involved are located. Thereafter, on the 14th of June, 1910, he sold and conveyed said land with the appurtenances to Reverend Father Berthold, who received the title thereto in trust for the defendant corporation and thereafter conveyed the title to said corporation. On said tract of land there is situated one main spring and two or more smaller ones, where the water comes to the surface of the ground. In the year 1905 said Rustemeyer made an excavation in the ground at or near the main spring and constructed troughs and placed the same in the ground so as to divert the entire volume of water from said main spring, and thus carried the entire volume of water a distance of about 75 feet to a larger watering-trough near his residence, and used the water for domestic and other purposes. Said springs are tributary to what is known as the south fork of Cottonwood creek, and ordinarily the water from said springs would flow down the hillside and find its way into said creek, except in very dry seasons, when it would not reach the stream. The Reverend Father Berthold purchased said described lands for the special purpose of

securing the water flowing from said springs for and on behalf of the defendant, and caused a ditch to be dug and pipes to be laid conducting the water from said springs down the canyon a distance of about one and one-half miles to the building and premises owned by the corporation defendant. The construction of said pipe-line was begun on September 5, 1910, and completed before December 25, 1910, and the water from said springs was diverted and carried through said pipes and used for the purpose of watering livestock and for domestic and irrigation purposes. Prior to September 9, 1910, the plaintiff corporation was supplying the town of Cottonwood and its inhabitants with water and charging rates therefor, and was maintaining a pump station in the town of Cottonwood for such purpose. Prior to said date the plaintiff purchased a tract of eleven acres of land lying across what is known as the south fork of the Cottonwood creek and a short distance from the property known as the monastery property, owned by defendant and through which property the defendant's pipe-line runs. On September 9, 1910, the plaintiff procured from the state engineer a permit to divert and appropriate one-fourth of one cubic foot per second of the waters from the south fork of said creek, with permission to make the diversion at a point on the south fork of said creek on plaintiff's eleven acre tract of land. Plaintiff thereupon constructed an earthen reservoir by excavating from the bed of the stream and by banking and diking, and constructed a pipe-line from said reservoir to the town of Cottonwood and completed the same about December 25, 1910, and began conveying water through said pipe-line. The same workmen and contractor built and constructed the pipe-lines for both plaintiff and defendant. The contract had been entered into for building defendant's pipe-line prior to entering upon the work for plaintiff.

Defendant's diversion basin is built of concrete at the spring on the Rustemeyer place, and its storage basin or reservoirs are built on the monastery property. The basin, together with the pipe-line, was constructed at a total cost of $4,600. The directors and officers of the plaintiff corpora-

tion knew of defendant's claim to the water of said springs and the expenditure that the defendant was making, and knew all the conditions of said streams and its tributaries. The plaintiff, through its officers and agent, applied to defendant to purchase water from its pipe-line, and defendant sold to plaintiff water for the months of August and September, and tapped its pipe-line at the point where it crosses plaintiff's said eleven acre tract of land, and supplied plaintiff with water during said months, for which plaintiff paid defendant the rental sum of fifty dollars. Thereafter, during the summer of 1914, the months of August and September were unusually dry and plaintiff then for the first time made claim to the waters of said springs, and when defendant objected and protested against plaintiff's claim, the plaintiff thereupon applied to defendant to again purchase water for said months and was given the right to tap defendant's pipe-line at the same place that it had been tapped during the summer of 1911, and plaintiff promised to pay defendant a reasonable sum for the use of said water during those months. Plaintiff at no time asserted any right to the waters of said springs and never claimed, or intended to claim, the same until the summer of 1914, at which time its officers and agents made their claim to said waters.

The above-stated facts are substantially the same as found by the court.

The fourth finding of fact is as follows: "That the appropriation and diversion of the waters of the said springs by the said Rustemeyer, as hereinabove found, was prior to any and all other appropriations made by the plaintiff or anyone else from the waters of said springs or the stream to which they are tributary."

Ninth finding of fact: "That up to the month of August, 1911, the waters from the south fork of Cottonwood creek and from said springs on the Rustemeyer place were amply sufficient to supply the demands of both the plaintiff and defendant and that there was no shortage of water for the use of both consumers prior to August, 1911, and that there had not been to the knowledge of those who had been long residents ·

of that vicinity any such shortage of water or unprecedented dry spell as occurred in the months of August and September, 1911, and that at the time the plaintiff company made its appropriation and constructed its diversion works and pipe-line it had no reason or cause to believe that it would need or have use for any of the water from the springs on the Rustemeyer place which were being diverted and used by the defendant for the Monastery property.

Tenth finding of fact: "The evidence shows that at the ordinary times the said springs will flow approximately 17,000 gallons daily, and that at present the defendant is needing and using upward of three thousand gallons daily on its Monastery property, and that its plans of construction will call for a daily consumption of approximately ten thousand gallons and that it has made its diversion, built its diversion basin, its pipe-line and its reservoir and storage basins looking to the completion of its plans which would call for a daily consumption of at least ten thousand gallons.

Thirteenth finding of fact: "That defendant is diverting the water of said springs and using and applying the same to a beneficial use and purpose, namely, for drinking, cooking and general household and domestic purposes and watering and supplying their livestock and irrigating garden truck."

The court drew its conclusions of law from said facts, and the 6th conclusion is as follows:

"That during the dry season, to wit, the months of July, August, September and October of each year, the defendant will be required to allow the plaintiff the unobstructed flow of the waters from said springs daily from 5 o'clock P. M. until 4 o'clock A. M. and that from 4 o'clock A. M. to 5 o'clock P. M. of each day during said period the defendant shall have the unobstructed use of the waters of said springs and it shall be allowed to flow through the pipe-lines the same as at other times without obstruction of any kind, and if the plaintiff and defendant can make satisfactory arrangements or agreement between themselves for such purpose, plaintiff may receive such supply of water from said springs through defendant's pipe-line, to be taken at the place where said

line was previously tapped by contract between the parties, but upon failure to reach an agreement as to the manner and conditions under which said pipe-line shall be tapped and the manner of turning on and off the supply, as herein indicated, then the defendant will be required to shut off the flow through its pipe-line at the diversion basin of said springs at 5 o'clock P. M., each day during the months of July, August, September and October, and the plaintiff will be required to turn the water into said pipes at said diversion point at the hour of 4 o'clock A. M. each day during said period of time."

In its decree, the court decreed, among other things, as follows:

" . . . . And that the amount and extent of the water right, to which the defendant is entitled and to which defendant's title is hereby decreed, adjudicated and quieted, is an amount equal to the full carrying capacity of the present pipe-line owned and maintained by the defendant running from the said springs, and the diversion basin built and constructed thereat, to the storage basin or reservoir at St. Michael's Monastery, supplying the same and the buildings maintained and kept in connection therewith, or in the event the carrying capacity of the said pipe-line exceeds ten thousand gallons per day, then the amount and quantity of water adjudged to the defendant herein shall equal the full volume of ten thousand gallons per day, and defendant is hereby adjudged and decreed to have a prior and superior right to the said water right and the amount and quantity thereof herein specified, and the plaintiff is hereby perpetually enjoined and restrained from asserting any right or title thereto or from interfering therewith at any time or in any manner disturbing or interrupting the defendant in the full enjoyment and exercise of its right of possession and use thereof."

Thereafter in said decree, it is further adjudged as follows:

"That, during the dry season, to wit, the months of July, August, September and October of each year, the defendant shall be required to allow the plaintiff the unobstructed flow of the waters from said springs daily from 5 o'clock

P. M. until 4 o'clock A. M., and that from 4 o'clock A. M. to 5 o'clock P. M. of each day, during such period, the de- -fendant shall have the free and unobstructed use of the waters of said springs, and it shall be allowed to flow through the pipe-lines at such time without obstruction of any kind whatever.''

The findings above quoted, made by the court, are supported by the evidence, and the conclusion of law to the effect that during the months of July, August, September and October of each year the defendant is required to allow the plaintiff the unobstructed flow of water from said springs daily from 5 o'clock P. M. until 4 o'clock A. M. is clearly not a correct conclusion of law to be drawn from the facts. The court found as a fact that the appropriation and diversion of water of said springs by Rustemeyer, the predecessor of the defendant, was prior to any and all other appropriations made by the plaintiff or anyone else from the waters of said springs; and further found that the defendant is entitled to 10,000 gallons of water per day from said springs.

By the 13th finding of fact, the court found that the defendant was applying the waters of said springs to a beneficial purpose. Under those facts, it was clearly error for the court to decree to the plaintiff water from the carrying capacity of said pipes from 5 o'clock P. M. until 4 o'clock A. M. of every day during the months of July, August, September and October. The defendant and its predecessors were the prior appropriators of the waters of said springs to the amount of 10,000 gallons per day, and under the provisions of the constitution of this state, sec. 3 of art. 15, ''Priority of appropriation shall give the better right as between those using the water.'' The defendant and its predecessor were the prior appropriators of said water, hence under the law they are entitled to the full amount appropriated. The object and purpose of the defendant was to establish a school, and it should be given a reasonable time in which to construct its buildings and fully apply said water to the uses intended before it would lose its right under such appropriation. The fact that plaintiff had for

parts of two or three seasons purchased water from the defendant, under the facts of this case, would not give it the right to demand the amount of water so purchased each succeeding season.

Under the law and the facts, the defendant is entitled to divert from said springs 10,000 gallons per day, and we therefore conclude that the judgment and decree must be modified to the extent of decreeing to the defendant the prior right to 10,000 gallons of water per day from said springs.

The cause is therefore remanded with instructions to make findings of fact, conclusions of law and enter a decree in favor of the defendant as above indicated. Costs are awarded to defendant.

Budge and Morgan, JJ., concur.