453 P.2d 819

**Austin STEVENSON et al., Plaintiffs-Respondents,**

v.

**Roy STEELE, Asahel Fairchild, LeRoy Day and Bruce Bedke, Defendants-Appellants.**

**No. 10101.**

Supreme Court of Idaho.

April 29, 1969.

Herman E. Bedke, Burley, for appellants.

Parry, Robertson, Daly & Larson, Twin Falls, for respondents.

McQUADE, Justice.

All of the parties to this action own certain water rights originally established by an 1894 water decree (sometimes called the "Stockslager decree") which apportioned the "waters of Basin Creek, Warm Springs Creek, Spring Creek, Bostetter Springs and Summit Creek and their tributaries."[1] This controversy involves the waters of Warm Springs in particular, which rise upon appellant Steele's land and form Warm Springs Creek, a tributary to Basin Creek (which latter creek is sometimes referred to in the record and exhibits as Mill Creek). The parties to this action are farmers and ranchers in the Basin Creek area near Oakley, Idaho.

Before trial the parties stipulated many of the significant facts in this case by their "Statement of Agreed Facts." Among these facts were the following. The flow of Warm Springs for years has been constant at approximately thirty miner's inches (0.60 cubic feet per second). In 1961 appellants drilled two wells near the origin of Warm Springs, but have retained the right to operate only the second of these under Permit No. G-29751. This well is approximately 550 feet from Warm Springs and has the same source of water as Warm Springs. Therefore pumping from the well reduces the flow of water from Warm Springs until it ceases entirely. The water produced by Warm Springs is warmer than the surface flow from other sources of water in the area during the non-irrigation season. The local ground water board concluded that appellants' well rights were junior and subsequent to respondents' rights to the use of waters from Warm Springs.

Additional evidence produced at trial to the district judge sitting without a jury showed the following facts. Because the water of Warm Springs has a deep source, its temperature is constant at approximately 60° F. The well driller's log showed that the water is held in earth composed mainly of limestone and quartzite from 87 to 200 feet below the surface.[2] The expert testimony of Mr. Keith Anderson, a consulting engineer whose qualifications were stipulated by appellants,[3] based upon the temperature and source of the water and the five year record of the effects of pumping the well upon the flow of Warm Springs, was that the continuation of appellants' present pumping program would result in the withdrawal of the ground

1. Plaintiffs' exhibit 1.

2. Plaintiffs' Exhibit 25.

3. B.S. (Geology), California Technological Institute, 1940; M.S. (Geology), University of Rochester (N.Y.), 1947; ground water geologist, U.S. Geological Survey; U.S. Bureau of Reclamation, Pacific Northwest Region, 1941–1957.

water supply in that area at a rate beyond the reasonably anticipated average rate of future natural recharge.

The proceedings below were occasioned by the fact that, when the appellants began pumping their well at the start of the irrigation season, Warm Springs dried up and respondents were deprived of the irrigation water normally supplied by Warm Springs. Respondents therefore brought a claim before the local ground water board for Cassia County.[4] After hearing evidence and making findings of fact the board on October 22, 1962, issued the following order:

; "THE BOARD THEREFORE, ORDERS that the water rights as may obtain through proof of completion of works and beneficial use as defined in Permit No. G-29751, for the respondents wells be recognized as of junior priority date to those rights to the use of Warm Springs water as set forth in the decree of the District Court of Cassia County, dated March 17, 1894, and applying to the waters of Basin Creek, Warm Springs Creek, Spring Creek, Bostetter Springs, Summit Creek and tributaries.

; "THE BOARD FURTHER ORDERS that in the administration of the foregoing water rights due recognition be given to the provisions of Idaho ground water statutes to the end that the respondents may exercise the junior rights defined under Permit No. G-29751, by supplementing the diminished flow of Warm Springs with water in place and in kind sufficient to maintain a constant flow of 30 miner's inches (0.60 cubic feet per second).

"THE BOARD FURTHER ORDERS that in the administration of the foregoing water rights due cognizance be given to the increased draft hereby authorized from the source tapped by the respondents wells to the end that the senior rights shall not be impaired through the dissipation of the ground water supply and the consequent inability of the respondents to supplement the diminished spring flows at any future time."

Appellants took no appeal from this order.

Appellants continued to pump their well and turned the required thirty inches of water back into Warm Springs during the irrigation season. However, appellants interpreted the order as not requiring the replacement of Warm Springs water after October 1st when the irrigation season ended and their own pumping of the well ceased. This had the effects of leaving Warm Springs dry from October 1 until various dates in December and January when its flow first returned and of preventing its return to a full thirty-inch flow until various dates in late January or February. Respondents complained that this deprived them of their customary means of watering stock during these months and caused them to incur extra pumping expenses.

Thus, after hearing before the department of reclamation on October 8, 1963, the following order issued:

"IN THE MATTER OF, the Ground Water Board Order of October 22, 1962, wherein the Board orders that the administration of the foregoing water rights due recognition be given to the provisions of the Idaho Ground Water Statutes to the end that the respondents may exercise their junior rights under Permit No. G-29751, by supplementing the diminished flow of Warm Springs, with water in place and in kind, sufficient to maintain a constant flow of 30 minor's inches (0.60 cubic feet per second); and,

"It Appearing, That the well defined in Permit No. G-29751 has been shut down as of October 1, 1963, and no water being delivered therefrom;

"IT IS THEREFORE ORDERED, by the State Reclamation Engineer, and in compliance with the Idaho Underground Water Code, and the terms of the de-

4. I.C. §§ 42-237c, 42-237d.

cree, applying to waters along Warm Springs Creek, that water be delivered in place and kind to the creek, until such a time as the flow from Warm Springs is sufficient to supply said 30 inches (0.60 cubic feet per second); the order to take effect immediately upon receipt of this notice."

Appellants took an appeal from this order under I.C. § 42–237e.

Respondents moved that the district court dismiss the appeal to the district court on the theory that the order of the department of reclamation was merely an order to enforce the prior order of the ground water board from which no timely appeal had been taken. District Judge Webb denied the motion in a memorandum opinion which stated in part:

"[Appellants'] counsel contends that the 1963 order made an additional obligation for [appellants] to pump the year around, whenever the stream flow was less than the 30 inches.

"[Respondents'] counsel argue, with some degree of persuasion, that one can find no changes in the 1963 order from that of 1962, that it is simply an order to compel [appellants] to comply with the original order.

"I believe the two positions could be taken with logic. One that the 1963 order is simply a clarification of intent of the original order. This would hardly be a change of substance or character allowing later appeal. Another would be that, regardless of the Board's initial intent, [appellants] under the 1962 order had no obligation to pump all year while under the 1963 order they do. This would be a change of substance or character. Considering the interest of the law in preserving a person's right to appeal except where clearly lost or abandoned, I take the second position."

It is apparent that the court desired to have the case tried upon its merits and therefore gave appellants the benefit of its doubts as to the appealability of the order.

District Judge Ward then tried the case *de novo*. Relying heavily upon the testimony of Mr. Anderson, the court concluded that if the summer irrigation pumping continued, the return of flow to Warm Springs would be less and later each year until finally it never returned because the pumping of the well would eventually deplete the ground water supply in that area. The court thus concluded that appellants could not exercise their junior well rights without impairing the senior rights of respondents in Warm Springs. The court permanently enjoined appellants from operating either of their wells at any time in the future and from interfering with respondents' rights to Warm Springs.

Appellants' first assignment of error is that the court erred in assuming *de novo* jurisdiction to try the October 22, 1962, ruling of the ground water board. This contention in essence is that the question whether or not pumping from the well had an adverse effect upon the ground water supply should not have been an issue in the trial. We disagree for the following reasons.

First, appellants appealed to the district court pursuant to I.C. § 42–237e. That section provides in pertinent part that "any person dissatisfied with any decision, determination, order or action of the state reclamation engineer * * * or of any local ground water board * * *." may appeal to the district court. The appeal must "[set] forth the reasons why the [order, etc.] was erroneous." The state reclamation engineer must transmit a "transcript of the proceedings and the evidence received * * * [at the prior] hearing and the evidence taken at such hearing may be considered by the District Court." Then it is provided that "the District Court shall try the same anew at the hearing on the appeal."

As applied to the case at bar, appellant cannot now deny the existence of an issue which was raised by their own

notice of appeal from the order of the state reclamation engineer. Appellants' required statement of reasons for appeal included the following:

"2. That the order appealed from is contrary to an order of the local Ground Water Board for Cassia County, Idaho, issued October 22, 1962 [i. e., the prior order].

\* \* \* \* \* \*

"5. The water table is gradually raising [sic] in the well and if the well is not pumped during the winter months the spring will recharge itself and start natural flow in January as it did last year to an extent greater than the normal 30″ flow."

These stated grounds for appeal surely comprehend the issue of fact as to whether or not the ground water supply, especially as affected by appellants' well, will support a continued flow of Warm Springs necessary to satisfy the senior appropriation rights of respondents. Appellants asserted that the water table was rising, while respondents argued that it was falling. The district court was required to try this issue "anew" or *de novo*. Both the first and second orders are concerned with one central issue, namely, whether appellants' operation of their well unlawfully infringed respondents' senior rights to water from Warm Springs. An unavoidable factual issue would be whether or not pumping the well would eventually prevent any use of Warm Springs in summer or winter for any purpose.

Secondly, District Judge Webb stated as part of his pretrial order that, though there was a question as to whether the court could consider respondents' initial request for a permanent injunction against appellants' pumping, yet "since the appeal is heard *de novo* it would appear \* \* \* that any issues available below are available here \* \* \*." The court went on to state

that it would not consider favorably the assertion of issues not defined in the pretrial order "unless those issues are brought to the attention of the court through objections or proposed amendments to this order as provided by the rules."

■ We do not read this order as precluding a resolution of the issue as to the supply of ground water. Idaho R.Civ.P. 16 provides in pertinent part:

*"Pre-trial procedure—Formulating issues.* —In any action in district court, the court may in its discretion direct the attorneys for the parties \* \* \* to appear before it for a conference to consider

(1) The simplification of the issues;

\* \* \* \* \* \*

"The court shall make an order which recites the action taken at the conference \* \* \* and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

For our purposes, this portion of the rule is identical with Fed.R.Civ.P. 16. The primary purpose of the rule is to simplify issues by getting adversaries together as to issues which are not really disputed.[5] To this end, the parties must fully disclose in good faith their substantial contentions and the gist of the evidence expected to support those contentions. At the same time, however, pre-trial procedure should not be rigidly applied to require detailing of claims and defenses in the manner of special pleading, for "not without careful planning were the federal rules designed to eliminate the evils of special pleading, and they should not be brought back under the guise of pre-trial."[6] Thus, it has been urged that, absent bad faith and prejudice to an opposing party, amendments to the

5. Clark, Objectives of Pre-Trial Procedure, 17 Ohio St.L.J. 163 at 167 (1956); Kincaid, A Judge's Handbook of Pre-Trial Procedure, 17 F.R.D. 437 at 441 (1955).

6. Padovani v. Bruchhausen, 293 F.2d 546 at 549 (2nd Cir. 1961) (per Clark, J.).

pre-trial order "to prevent manifest injustice" under rule 16 should be liberally granted just as amendments to pleadings are "freely given when justice so requires" under rule 15(a).[7] Under Idaho R.Civ.P. 16 the court may expedite justice, but it must always do substantial justice.

Next we will consider respondents' original claim for a permanent injunction against appellants' pumping their well. That claim depended upon the factual issue of whether or not the pumping would do permanent harm to the ground water supply. The court's pre-trial order appeared to recognize that issue for trial purposes even though the order indicated that the issue would not be viewed "with favor" if it were not defined in the order. We cannot view this order as entirely excluding consideration of the ground water issue. Indeed, it appears that appellants' effort on this appeal to exclude that issue is quite artificial. A thorough consideration of the narrow question of whether or not winter pumping into Warm Springs was required by the first order necessitates some consideration of the ground water supply and whether winter pumping in addition to irrigation pumping would deplete the water supply to the detriment of respondents' rights.

Finally, respondents after trial moved that the court amend the pre-trial order to include as an issue "whether [respondents] are entitled to injunctive relief against the actions of [appellants] in pumping their wells." The motion was made in order that "[the order would] conform to the evidence offered and received during the trial * * *." After hearing and argument, the court granted the motion to amend the pre-trial order, stating:

"* * * the Court being of the opinion that the issue of the plaintiffs' right to injunctive relief has been involved in

the case from its inception before the local Ground Water Board and throughout the trial hereof, and being of the opinion that if any modification thereof was necessary to include such issue, the Pre-Trial Order herein was so modified during the trial * * *."

This amendment of the pre-trial order was fully proper. Of course, we realize that the pre-trial order was issued by District Judge Webb and the case was tried by District Judge Ward. This change inevitably created some difference of approach, but District Judge Ward was the trier of fact, and he was in the better position to know what factual issues were actually tried by the parties. A case similar to the one at bar was First Nat. Bank in Greenwich v. National Airlines, Inc.[8] There the pre-tiral conference judge issued a pre-trial order which called for the trial of federal admiralty and state negligence issues simultaneously. The trial judge subsequently tried the issue of admiralty jurisdiction first and dismissed the state law claims. This was held not to be prejudicial error:

"Though the [trial] procedure adopted by Judge Levet may not have been in accord with the letter of [the pre-trial] order [by Judge Bicks], we can see no reason why that order should be interpreted to prevent the judge trying the case from resolving the jurisdictional question before reaching the issues of liability and damages; in any event, Judge Bicks' order under the view of the 'law of the case' concept taken in this circuit was not binding but rather addressed to the good sense of his colleagues." [9]

The optimum method in ordinary cases would be to have the pre-trial conference held by the same judge who will try the case shortly before trial.[10] However, the

---

7. James, Civil Procedure § 6.16 [pp. 227–228] (1965).

8. 288 F.2d 621 (2nd Cir. 1961).

9. *Id.* at 623.

10. See Pre-Trial Committee of Judicial Conference of Senior Circuit Judges, Report on Pre-Trial Procedure, 4 F.R.D. 83 at 93 (1944); Kincaid, *op. cit.* n. 7, *supra,* 444–445.

change in the composition of the court in the case at bar only illustrates the proposition that in some instances there may be some loss of procedural symmetry, and in such cases the function of procedural rules as means of doing substantial justice must be given full effect.[11]

The case of Washington v. General Motors Acceptance Corporation[12] cited by appellant is distinguishable from the case at bar. There the defendant had specified before trial and urged throughout the trial that the only issue as to the conversion of a car was whether or not the owner had given the company special permission to take the car on a specific day. This defense was the only one specified in the pre-trial order. On appeal, defendant argued that such permission had been given generally by the owner's execution of a conditional sales contract. The Court of Appeal applied Fed.R.Civ.P. 16 to exclude the assertion of such a contention. The present case is different because the pre-trial order appears to indicate that the extent of the ground water supply and the effects of pumping upon that supply were issues to be tried. Much evidence as to those issues was received during trial without objection by appellants. The pre-trial order was amended to conform to the evidence produced at trial. Respondents had originally requested an injunction against appellants' pumping at the hearing before the ground water board. Thus, appellants have been neither surprised nor prejudiced by the fact that the ground water issue was resolved.

The Idaho case of Earl v. Fordice[13] is distinguishable from the case at bar on precisely the same basis. The trespass issue in the *Fordice* case was raised on appeal for the first time as to certain parties. In the case at bar, the issue as to the supply of ground water has been present throughout the controversy. In this respect, the result we reach here might be said to follow a *fortiori* from Scott v. Spanjer Bros., Inc.[14] in which the court appointed for trial an impartial medical expert, though such a course of action had not been contemplated by the pre-trial order. This was held not to be error:

"The trial judge clearly has the authority to amend or modify a pre-trial order if this becomes necessary in the interest of justice. Nims, Pre-Trial p. 159 (1950). * * * While it is true that courts quite properly have been reluctant to allow modification of pre-trial orders where this would work an injustice, see * * * Washington v. General Motors Acceptance Corp. [cited and distinguished, *supra*], it should be recognized that an unswerving insistence upon every provision of a pre-trial order, under certain circumstances, may cause injustice."[15]

Judge Webb denied respondents' motion to dismiss appellants' appeal to the district court in order that substantial justice might be done with respect to the merits of the case. For purposes of appealability he viewed the second order as different from the first. However, we deem it inappropriate now to utilize that distinction as a means of precluding consideration of a basic issue raised by appellants themselves and critical to fair resolution of the controversy. Appellants did not object to the admission of evidence concerning the ground water supply such as records of the flow of Warm Springs and the well driller's log showing the composition of the rock in which Warm Springs has its source. This was especially significant because the latter exhibit was not available at the ground water board hearing, and it became an important factor in Mr. Anderson's opinion. All of this evidence formed the basis of Mr. Anderson's opinion that the pumping program would deplete the ground water supply. We therefore conclude that the court did not err in trying the factual issue as to the ground water supply. As

11. Cf. Idaho R.Civ.P. 15(b).

12. 19 F.R.D. 370 (D.C., 1956).

13. 84 Idaho 542, 374 P.2d 713 (1962).

14. 298 F.2d 928 (2nd Cir. 1962).

15. *Id.* at 931.

implied by the court below in its amendment of the pre-trial order, the pre-trial order will be deemed to be amended during trial to conform to evidence received without objection.[16] We may agree with appellants' statement that objections to the subject-matter jurisdiction may be raised at any time,[17] but we find that appellants' objections as to the scope of jurisdiction assumed by the district court are not well taken.

Turning from the procedural questions to the substantive basis of the injunction of appellants' pumping of their well, there is some divergence between the parties as to the basis of respondents' rights to use the water of Warm Springs in winter for livestock watering purposes. Appellants appear to assert that respondents' rights are based upon the Stockslager decree, especially the portion which provides:

"That the irrigating season begins on the first day of April, and ends on the first day of October, of each and every year, at which date all waters are to be turned into the natural channels, except such amounts as may be necessary for domestic and stock purposes."

Respondents base their rights to water more generally upon the doctrine of appropriation of water for beneficial purposes.[18]

We view this divergence as a matter more of form than substance, for the Stockslager decree distributed water among various appropriators who had claimed water for beneficial purposes such as irrigation, domestic use and watering livestock.

That decree itself was based upon the doctrine of appropriation of water for beneficial purposes. The portion of the decree which states that after October 1 waters are to be returned to natural channels except for amounts necessary for domestic and stock purposes places a limit upon the irrigation use of water but in no way restricts the winter use of water for other purposes. On the contrary, the decree recognizes "stock purposes" as a beneficial use. Thus, under both the decree and the general water law of this State respondents' appropriation of Warm Springs water for winter watering of stock is entitled to the protection afforded by law.[19]

Appellants concede that respondents' rights to water from Warm Springs are prior in time and in right to appellants' right to water from the well. Both Warm Springs and the well have the same ground water source. The state reclamation engineer, whose order appellants appealed and which the district court tried *de novo*, has broad powers in this area. I.C. § 42–237a provides in pertinent part as follows:

*"Powers of the state reclamation engineer.*—In the administration and enforcement of this act and in the effectuation of the policy of this state to conserve its ground water resources, the state reclamation engineer is empowered:

\* \* \* \* \* \*

"(g.) To supervise and control the exercise and administration of all rights

16. Bucky v. Sebo, 208 F.2d 304 at 305 (2nd Cir. 1953) (trial judge properly considered patent infringement—estoppel issue referred to at trial without objection though pre-trial order mentioned only patent validity-estoppel issue, for Rule 16 is to be read in light of Rule 15 [b]), followed in Frontier Fibreglass Industries v. City of Cheyenne, 435 P.2d 456 at 458 (Wyo.1967) (construing Wyo.R.Civ.P. 16); Bowles v. Wheeler, 152 F.2d 34 at 42 (9th Cir. 1945); Note, Variance From the Pre-Trial Order, 60 Yale L.J. 175 at 180–183 (1951).

17. See Hauter v. Coeur d'Alene etc. Min. Co., 39 Idaho 621 at 634, 228 P. 259 at

263 (1923); Richardson v. Ruddy, 15 Idaho 488 at 494–495, 98 P. 842 at 844–845 (1908); Aram v. Edwards, 9 Idaho 333 at 337, 74 P. 961 at 962 (1903).

18. Idaho Const. art. 15, § 3; I.C. §§ 42–101, 42–103, 42–104, 42–106, 42–111.

19. Cottonwood Water & Light Co. v. St. Michael's Monastery, 29 Idaho 761, 162 P. 242 (1916); Town of Genoa v. Westfall, 141 Colo. 533, 349 P.2d 370 (1960); Adams v. Portage Irrigation, Etc., Co., 95 Utah 1, 72 P.2d 648 at 655 (1937); Steptoe Livestock Co. v. Gulley, 53 Nev. 163, 295 P. 772 (1931).

hereafter acquired to the use of ground waters and in the exercise of this power he may by summary order, prohibit or limit the withdrawal of water from any well during any period that he determines that water to fill any water right in said well is not there available. * * * Water in a well shall not be deemed available to fill a water right therein if withdrawal therefrom of the amount called for by such right would affect, contrary to the declared policy of this act, the present or future use of any prior surface or ground water right or result in the withdrawing the ground water supply at a rate beyond the reasonably anticipated average rate of future natural recharge."

Both the first order of the ground water board and the second order of the state reclamation engineer expressly recognized that "due recognition be given to the provisions of Idaho ground water statutes * * *." In trying the latter order *de novo*, the court was empowered to enjoin all pumping of appellants' well because it found that such pumping "would affect, contrary to the declared policy of this act, the present or future use of any prior surface or ground water right or result in the withdrawing of ground water supply at a rate beyond the reasonably anticipated average rate of future natural recharge."[20] As the state reclamation engineer or ground water board could have "prohibited" appellants' withdrawal of water from the well under the statute, so also it was proper for the court to enjoin the operation of the well in order to prevent the desiccation of Warm Springs and the consequent infringement of respondents' senior rights.[21]

Appellants next assign error to the court's findings of fact in relation to the availability of winter water other than that of Warm Springs, the past use of Warm Springs for winter watering of stock, the warmer temperature and beneficial effects of Warm Springs water, and the delayed return flow of Warm Springs. Because of the nature of land ownership in the area where the parties have their farms and because of the somewhat indefinite patterns of water use by the parties, the record in this case is detailed and complex. The evidence produced could hardly be classified as scientific. Our review in the record indicates that the factual conclusions of the court below are supported by sufficient evidence to prevent us from overturning them as "clearly erroneous" under Idaho R.Civ.P. 52(a). As required by that rule, we also give proper regard to the "special opportunity of the trial court to judge of the credibility of those witnesses who appear personally before it."

In particular, appellants attack the court's acceptance of the opinion of Mr. Anderson upon the ground water supply. However, Mr. Anderson's qualifications as a geologist and ground water engineer were unchallenged, and appellants had full opportunity to cross-examine him as to the basis of his opinion that the use of appellants' well was actually removing ground water beyond the rate of recharge. The facts upon which Mr. Anderson based his opinion were for the most part uncontradicted. We cannot conclude that the court as the trier of fact abused its discretion in receiving this opinion and giving it the weight and effect which the court found appropriate.[22] Neither can we conclude that the court abused its discretion by denying appellants' motions for a new trial and to amend judgment.[23]

---

20. I.C. § 42–237a(g).

21. Martiny v. Wells, 91 Idaho 215, 419 P.2d 470 (1966) ; Noh v. Stoner, 53 Idaho 651 at 655, 26 P.2d 1112 at 1113 (1933) ; Silkey v. Tiegs, 51 Idaho 344, 5 P.2d 1049 (1931).

22. State ex rel. Burns v. Blair, 91 Idaho 137 at 138, 417 P.2d 217 at 218 (1966) ; Smith v. Big Lost River Irrigation District, 83 Idaho 374 at 387, 364 P.2d 146 at 157 (1961) ; Jensen v. Boise-Kuna Irr. Distr., 75 Idaho 133 at 143, 269 P.2d 755 at 761–762 (1954).

23. Idaho R.Civ.P. 59(a) ; Blaine v. Byers, 91 Idaho 665 at 671, 429 P.2d 397 at 403 (1967) ; Cassia Creek Reservoir Co.

Most of appellants' argument on appeal is devoted to the contention that respondents really have no need for winter water for watering their livestock and that therefore appellants should not be compelled to pump water into Warm Springs during the winter months when its flow has not yet returned because of appellants' summer pumping. We note first that this contention assumes that appellants may continue to pump their well during the irrigation season. That assumption cannot be admitted in view of the prior disposition of the ground water supply issue. As all of appellants' pumping of their well has been enjoined for the reason that it will deplete the ground water supply, the flow of Warm Springs will return to its normal flow. Therefore it is unnecessary to compel appellants to pump water into Warm Springs at any time.

In any event, the contention that respondents have not used and do not need the water from Warm Springs runs contrary to the court's findings of fact that "the normal flow of Warm Springs throughout the years * * * has been used for * * * domestic purposes" and that "for more than 50 years the water of Warm Springs Creek has been used by [respondents] and their predecessors during the winter months and during the non-irrigation season for livestock watering purposes * * *." We accept these findings and reject this last of appellants' contentions.

The judgment of the district court is affirmed. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

v. Harper, 91 Idaho 488 at 490, 426 P.2d 209 at 211 (1967) ; Sanchotena v. Tower Co., 74 Idaho 541 at 546, 264 P.2d 1021 at 1024 (1953).