759 P.2d 919

**Bobby G. WHITLOCK,**
**Plaintiff–Respondent,**

v.

**HANEY SEED COMPANY, a corporation, Defendant–Appellant.**

**No. 16749.**

Court of Appeals of Idaho.

July 8, 1988.

Robert D. Lewis (Cantrill, Skinner, Sullivan & King) and Holland & Hart, Langroise, Sullivan, Boise, for defendant-appellant.

Lloyd J. Webb (Webb, Burton, Carlson, Pedersen & Webb), Twin Falls, for plaintiff-respondent.

BURNETT, Judge.

Haney Seed Company appeals from a judgment awarding damages to a former employee, Bobby G. Whitlock, who sued Haney Seed for breach of an employment contract. We are presented with a potpourri of issues: (1) whether the jury correctly found that Whitlock was fired in violation of an employment contract requiring good cause for termination; (2) whether the trial court properly instructed the jury on the correct standard regarding breach of an employment contract; (3) whether the trial court erred in precluding defense counsel from arguing a certain view of the facts to the jury; (4) whether the damage award was supported by substantial evidence; (5) whether the trial court erred in granting treble damages on certain employee benefits as though they were unpaid wages; and (6) whether the trial court erred in awarding prejudgment interest on the amounts by which damages were increased through trebling. For reasons explained below, we affirm the judgment of the district court, with modifications, and we remand the case for entry of judgment consistent with this opinion.

Bobby Whitlock began working for Haney Seed in 1953, when he was fourteen years old. With the exception of absences in 1959–61 and 1966–68, he remained in Haney Seed's employ until he was fired in 1983. During the last ten years, from 1973 to 1983, Whitlock managed the company's Glenns Ferry plant as well as its trucking service. During the early 1980s, Haney Seed encountered financial difficulties. In 1982, management of the company was assumed by the Idaho First National Bank, a major creditor, under an informal receivership arrangement. Less than a year later, Whitlock was terminated.

Following his discharge, Whitlock was able to find alternative employment for various periods of time but was not able to match his earlier salary. He sued Haney Seed for damages allegedly resulting from defamation and breach of the employment contract. The district court granted Haney Seed's motion for summary judgment on the breach of contract claim, concluding that Whitlock was an employee-at-will who could be terminated without cause. That judgment was appealed. *See Whitlock v. Haney Seed,* 110 Idaho 347, 715 P.2d 1017 (Ct.App.1986) (hereinafter *Whitlock I*). We determined that material issues of fact remained concerning Whitlock's employment status. The summary judgment was reversed and the case was remanded for trial.

On remand, a jury found against Whitlock on the defamation claim. However, the jury did determine that Whitlock had been discharged without good cause, in violation of the employment contract. They awarded damages in the form of future wages, earned vacation pay, and the cash value of a life insurance policy purchased by the company on Whitlock's behalf. Subsequently, the trial court entered a judgment trebling the amounts awarded for vacation pay and the cash value of the insurance policy. Prior to the entry of this judgment, Haney Seed filed motions for a new trial, for judgment notwithstanding the verdict, and for alteration or amendment of the judgment. However, rather than pursue these motions, counsel later opted to withdraw them and to file this appeal from the judgment.[1]

---

1. The trial judge eventually prepared an order concerning the withdrawn post-trial motions. It is clear that he was disposed to grant much of the relief requested by Haney Seed. However, he deemed himself without jurisdiction to decide the motions because the appeal had been filed. He criticized defense counsel's decision to appeal the judgment hurriedly rather than to await rulings on the motions. We agree with the judge's sentiments. Although the appeal technically was proper, and the issues before us now must be decided on appeal, *see Bailey v. Sound Lab, Inc.,* 694 P.2d 1043 (Utah 1984), it is usually wise to give the trial judge an opportunity to reconsider an issue before taking it to an appellate court.

## I

We first discuss the breach of contract question. It subsumes three separate issues. The first concerns whether Whitlock was an employee-at-will. If Whitlock was not an employee-at-will, then we must decide whether he was discharged without good cause, in violation of his employment contract. Finally, we are asked to examine the propriety of a trial court ruling that precluded Haney Seed from arguing a certain view of the facts to the jury.

### A

Haney Seed contends that Whitlock was an employee-at-will who could be discharged without cause. Whitlock asserts that we held otherwise, and laid the issue to rest, in *Whitlock I.* We believe the matter requires further elaboration.

As noted in our *Whitlock I* decision, the evidence presented at the summary judgment stage demonstrated that an oral contract existed between Haney Seed and Whitlock but that the specific terms of the agreement were disputed. Nonetheless, we held that the evidence was undisputed to the extent of showing that the company was limited in the reasons for which it could terminate Whitlock's employment—thus removing him from the at-will status. The case was remanded for trial so a jury could determine the full meaning and duration of the employment contract.

■ At the close of evidence at trial, the jury was instructed that "[t]he contract of employment between Whitlock and Haney Seed was a valid oral agreement." However, the jury was also instructed that the terms of the contract were unclear with respect to two issues: the particular conditions under which Whitlock could be terminated and the duration of the contract. Haney Seed requested a further instruction directing the jury to determine whether a contract existed at all. That instruction was refused.

We think the trial judge acted correctly. As already noted, the evidence existing at the time of the summary judgment hearing disclosed an oral employment agreement. This agreement was made by Whitlock and Richard Cook, Haney Seed's former president. At trial, the contract was again proved through the testimony of both Cook and Whitlock. The company was unable to produce any rebutting evidence.

■ In a closely related argument, Haney Seed contends that even if a contract existed—and if it provided that Whitlock would be employed until he ceased to perform satisfactorily or until certain extrinsic events occurred, as discussed in *Whitlock I*—such a contract still constituted nothing more than at-will employment. We disagree. In our view, such an agreement limits the reasons for discharge and takes the employment relationship outside the at-will doctrine.

### B

Haney Seed next asserts that Whitlock was not discharged in violation of his employment contract. This argument is two-pronged. The company first urges that the trial court improperly instructed the jury on the standard for breach of contract. Alternatively, Haney Seed challenges the jury's factual finding that Whitlock was discharged without good cause.

#### 1

■ The company asserts that the jury should not have been instructed on the question of "good cause" for the termination.[2] This argument is opaque. If it is a reassertion of Haney Seed's position that Whitlock was an at-will employee, we have

---

2. The trial judge instructed the jury as follows:
   Whether in this case Haney Seed Company had good cause for Whitlock's termination is for you to determine, based upon all of the evidence presented to you. The standard for your application in determining that question is whether Whitlock performed his duties for Haney Seed Company in a manner required by the contract.

   . . . .
   If you find that the plaintiff, Bobby G. Whitlock, has established that he has been terminated in violation of the employment contract with defendant, Haney Seed Company, the employer has the burden of establishing the existence of good cause for the termination.

answered the argument. If it is an assertion that unsatisfactory performance, rather than "good cause" should have been the standard employed by the jury, then we think the argument urges a distinction without a genuine difference.

The trial judge may have drawn the phrase "good cause" from *Rosecrans v. Intermountain Soap & Chemical Co., Inc.*, 100 Idaho 785, 605 P.2d 963 (1980). There the Supreme Court held that if an employer and an employee enter into a contract for a term of employment, the employee can be discharged prior to the term's expiration only if he has breached some contractual provision or has otherwise acted in a manner constituting "good cause" for his dismissal. Although the contract in the present case did not contain a discrete term of employment, it did embody a continuing right to employment unless performance was unsatisfactory or an extrinsic event occurred, as discussed in *Whitlock I.* We think the "good cause" terminology was appropriate to this case. "Good cause" is a question of fact for the jury to determine. Accordingly, we hold that "good cause" instructions were properly given.

2

■ We next consider the company's claim that good cause did, in fact, exist for Whitlock's termination. Specifically, Haney Seed asserts that Whitlock failed to perform his duties satisfactorily after new management assumed control of the company. Our review of jury findings is limited by a standard of deference.

> Our function is to determine whether a jury reasonably could have found as did the jury in this case. We will not disturb jury verdicts supported by substantial and competent evidence, even though we entertain doubt as to which party's version of the conflicting facts is more probable.

*Challis Irrigation Co. v. State*, 107 Idaho 338, 348, 689 P.2d 230, 240 (Ct.App.1984).

Here, as could be expected, there was conflicting testimony concerning the quality of Whitlock's work. Haney Seed urged several categories of unsatisfactory performance which arguably provided sufficient grounds for discharge. The company claimed that Whitlock had made capital expenditures without prior approval, that he had used company personnel to care for his lawn, and that he was "stripping" trucks which the company had decided to sell. However, Whitlock presented evidence that the capital expenditures were approved and that the "stripping" of trucks actually consisted of removing his own personal property as well as changing the tires and wheels at the request of his superiors. Finally, Whitlock presented evidence that it was a known practice in the company for some managers to have company personnel perform lawn care at their homes. The jury chose to accept Whitlock's version of events. This it was entitled to do. Because there was substantial, albeit conflicting, evidence presented, we will not disturb the jury's determination that Whitlock was fired without good cause.

C

■ Haney Seed's final challenge to the finding of wrongful discharge concerns a matter of trial procedure. The company contends that the trial judge erroneously barred counsel from arguing to the jury that Whitlock was motivated to "strip" the trucks because he wished to reduce their value and then purchase them himself. The company asserted that this ill motive on the part of Whitlock justified a discharge.

In support of this argument Haney Seed sought to introduce copies of inventories of the trucks made before the "stripping" as well as the testimony of an expert appraiser who examined the trucks after the items were removed. Counsel for Whitlock objected to the introduction of this evidence. The trial judge ruled that the evidence was relevant to issues of credibility and to ascertaining the value of the trucks. Therefore, he allowed it to be admitted. However, the judge also ruled that there was no evidence in the record to support the argument that Whitlock stripped the trucks for the purpose of devaluing them in order to purchase them himself at a favor-

able price. Accordingly, the judge prohibited defense counsel from making this argument to the jury unless and until further evidence was presented to justify such an inference.

In foreclosing the company's argument, the trial judge in effect removed an issue from the jury's consideration. A court should not withdraw an issue from the jury unless there is a lack of substantial evidence—that is, a lack of evidence on which reasonable minds could rely in making a finding. *Anderson v. Blackfoot Livestock Company*, 85 Idaho 64, 375 P.2d 704 (1962). Here, our review of the record convinces us that the trial judge's ruling was correct. The record lacks evidence sufficient to support a reasonable inference that Whitlock removed equipment from the trucks for the purpose suggested. Although he may have removed some items without company approval, the evidence indicates that Whitlock removed the tires and wheels on the trucks to be sold and exchanged them for tires and wheels of lesser quality that were on trucks that the company planned to *retain*. Additionally, Whitlock removed equipment that belonged to him personally as well as certain other items of negligible value. These facts afforded no substantial basis for a reasonable mind to infer an improper, hidden motive. Accordingly, we hold that the trial judge did not err in withholding that issue from the jury.

## II

Haney Seed next attacks the damage award. At trial, Whitlock sought recovery of three items of damage: loss of future wages, earned but unpaid vacation leave, and the cash value of a whole life insurance policy purchased by the company. The company contends that the awards for lost future wages and for earned vacation pay were not supported by the evidence.[3]

## A

We first discuss the loss of future wages due to the breach of contract. The general rule in Idaho is that a wrongfully discharged employee may recover the contract price (the bargained-for compensation) over the remainder of the contract, reduced by any expenses saved and by the amount he or she received or could have earned from other suitable employment available because of the discharge. *Anderson v. Gailey*, 100 Idaho 796, 606 P.2d 90 (1980). Here, the jury properly was instructed according to this principle.[4] However, the jury made an award of $60,000—a figure inconsistent with the evidence.

In its special verdict, the jurors found Whitlock's monthly salary at the time of discharge to be $2,500. They also determined that his employment contract with Haney Seed would have been in effect until the company ceased operations at the end of 1985—approximately two and one-half years after the firing in June, 1983. Thus, Whitlock's expected earnings over the remainder of his contract would have been $30,000 per year or $75,000. From this the jury was directed to subtract amounts earned in mitigation from other employment.

The undisputed evidence showed that during 1983, prior to his termination in June, Whitlock earned $16,086 at Haney Seed. During the rest of the year he received $4,134 in unemployment compensation and $6,875 from other employment. Subtracted from total expected 1983 earnings of $30,000, his damages for that year amounted to $2,905. In 1984, Whitlock earned $25,400 at a new job with the Redi–Spud Company. Thus, his loss in 1984 was $4,600. Finally, in 1985 Whitlock earned $12,677 from various jobs, leaving a difference of $17,323. Thus, the total damages for two and one-half years amounted to

---

3. The trial court accepted this argument. In his memorandum decision discussing the withdrawn post-trial motions, he expressly stated that he would have reduced the recovery for breach of contract damages and vacation pay to the amount urged by Haney Seed.

4. No evidence was presented concerning saved expenses. Accordingly, the trial judge did not include this factor in his instructions to the jury.

**634**

$24,828. The $60,000 award clearly was in error. The judgment must be modified accordingly.

**B**

▮ The jury's award of earned vacation pay also was erroneous in amount. When discharged, Whitlock had not used three weeks of paid vacation. He requested payment and the company refused. At trial, counsel stipulated that the value of the unpaid vacation was $1,731. The jury was instructed that if it found Whitlock entitled to compensation for unpaid vacation, it should award the stipulated amount. Nonetheless, the jury awarded $2,170. The amount must be corrected on remand.

**III**

▮ Haney Seed next challenges the trial judge's decision to treble the damages for unpaid vacation and for the cash value of the life insurance policy, as though they were unpaid wages for services performed under I.C. § 45–615(4). The company argues that the trial judge erred in applying the statute because it was not pleaded by either party, nor was it otherwise raised as an issue at trial. Haney Seed has not cited any authority supporting the proposition that statutes automatically enhancing or limiting damage awards must be specifically pleaded, nor has our research disclosed any authority on this point.[5]

Haney's argument runs counter to the general policy underlying modern notice pleading. Generally, a claim for relief need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief...." I.R.C.P. 8(a)(2). *See also Farrell v. Brown*, 111 Idaho 1027, 729 P.2d 1090 (Ct.App.1986). Whitlock's complaint complied with this requirement. The complaint prayed for monetary relief from breach of an employment contract. This was sufficient to place Haney Seed on notice that unpaid wages, or items analogous to wages, could be awarded.

Idaho Code § 45–615(4) is a statute of mandatory—rather than discretionary—application. It provides that any employee suing for unpaid wages "shall be entitled to ... three times the amount of unpaid wages found due and owing." Its application to a fact pattern within its scope is automatic. Accordingly, we find no procedural error in the trial judge's decision to apply the statute here.

▮ Haney Seed next argues that even if it was procedurally correct to consider the statute, it was substantive error for the trial judge to treat the cash value of the life insurance policy as wages under the statute.[6]

Idaho Code § 45–609(3) defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." We do not believe this language encompasses the cash value of a life insurance policy payable to an employee where, as here, the proceeds of the policy were to be paid to the employee at retirement or to his heirs upon his death. The policy is a fixed benefit of employment status. As such, it is compensatory in a generic sense; but it is not compensation earned in increments as services are performed. In this respect it is unlike wages. It is also unlike compensation paid in direct consideration of services rendered, in amounts over and above an employee's reg-

---

5. The present version of Rule 9(g), may provide some support for Haney Seed's position. It requires items of special damage claimed to "be identified by category and the specific dollar amount may be stated." However, the rule did not contain this requirement when the instant case was pleaded and tried.

6. Haney Seed does not question the treatment of earned vacation pay as wages. In our view, payment for earned vacation is directly analogous to wages. All courts that have considered this question under their respective wage claim statutes have concluded likewise. *See, e.g., Hartman v. Freedman*, 197 Colo. 275, 591 P.2d 1318 (1979); *Die & Mold, Inc. v. Western*, 448 N.E.2d 44 (Ind.Ct.App.1983); *Tompkins v. Schering Corp.*, 441 So.2d 455 (La.Ct.App.1983); *State v. Oregon State Motor Association*, 248 Or. 133, 432 P.2d 512 (1967). *Cf. Schoonover v. Bonner County*, 113 Idaho 916, 750 P.2d 95 (1988) (payment for earned compensatory time constitutes wages).

ular "paychecks." *See, e.g., Neal v. Idaho Forest Industries, Inc.,* 107 Idaho 681, 691 P.2d 1296 (Ct.App.1984) (sixty-day bonus to employee for remaining with company while operations were wound up). *See also Gray v. Empire Gas, Inc.,* 679 P.2d 610 (Colo.Ct.App.1984) (bonus payments paid in place of supplementary commissions are wages); *Ives v. Manchester Subaru, Inc.,* 126 N.H. 796, 498 A.2d 297 (1985) (employer contributions to profit-sharing plan constitute wage payments).[7] Accordingly, we conclude that the trial judge erred in trebling the unpaid cash value of the life insurance policy.

### IV

 Finally, Haney Seed contends that the trial court erred in awarding prejudgment interest on any portion of the total damage award which was produced by trebling under I.C. § 45–615(4). The only such trebling, in light of our opinion today, is that relating to the vacation pay.

Prejudgment interest is provided by statute in the absence of an express contract fixing a particular rate. *See* I.C. § 28–22–104. Such statutory interest accrues only upon sums "due." Here, although the vacation pay was earned—and therefore was "due"—when Whitlock was discharged, the additional amount produced by trebling became "due" only when judgment was entered. Accordingly, with respect to the vacation pay, Whitlock is entitled to prejudgment interest only on the untrebled portion.

Of course, the entire damage award will draw interest at the judgment rate from the date judgment was entered. Our remand for modification of the judgment will not affect the accrual of such interest on the modified amount from the date of the original judgment. *See Dur-* *steler v. Dursteler,* 112 Idaho 594, 733 P.2d 815 (Ct.App.1987).

The judgment of the district court is affirmed as modified. The case is remanded for entry of a judgment consistent with this opinion. No costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

---

7. Our conclusion is consistent with that reached by most courts faced with the question whether medical or life insurance benefits constitute wages where an employee has made a claim for workers' compensation based upon a work-related injury. *See Morrison–Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs,* 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed. 2d 194 (1983); *Linton v. City of Great Falls,* 749 P.2d 55 (Mont.1988); *Nelson v. Saif Corporation,* 78 Or.App. 75, 714 P.2d 631 (1986), *affirmed,* 302 Or. 463, 731 P.2d 429 (1987). *But see Ex parte Murray,* 490 So.2d 1238 (Ala.1986) and *Ragland v. Morrison–Knudsen Co., Inc.,* 724 P.2d 519 (Alaska 1986) (fringe benefits are wages).