764 P.2d 95

**Keith B. NILSSON,
Plaintiff–Respondent,**

v.

**MAPCO, a Nevada corporation,
Defendant–Appellant.**

No. 17084.

Court of Appeals of Idaho.

Oct. 13, 1988.

Claude V. Marcus, of Marcus, Merrick & Montgomery, Boise, for defendant-appellant.

William B. Latta, Jr., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

This is an employment termination case. Mapco, Inc., a Nevada Corporation (MAPCO–Nevada), appeals from a judgment entered upon a jury's special verdict finding that it wrongfully terminated Keith B. Nilsson's employment. On appeal, MAPCO–Nevada contends: (1) that it was not Nilsson's employer; (2) that if it was Nilsson's employer, Nilsson was an at-will employee, and could be terminated for any reason; (3) that the trial court erred in failing to give the jury instructions concerning at-will employment; and (4) that MAPCO–Nevada was entitled to costs and attorney fees on its defense of this action. We hold that MAPCO–Nevada was the proper party to this action, but that the trial court's jury instructions and special verdict form were ambiguous and not fully consistent with present Idaho law. We therefore vacate the judgment and remand this case for a new trial.

Nilsson was employed as maintenance superintendent at the DeLamar Silver Mine in May, 1979. The initial job offer was made by Lyle Talbott, manager of the mine, on behalf of Earth Resources Company (ERC), a joint venture that operated the facility. When he was hired, Nilsson was given an employee handbook which outlined ERC's policies regarding a "guarantee of fair treatment" for all employees,

disciplinary procedures, and "rules of good conduct," enumerating certain grounds for terminating employees. Some time after Nilsson's hiring, ERC was acquired by Mapco Minerals Corporation (MMC), a subsidiary of MAPCO, Inc., a Delaware Corporation (MAPCO–Delaware). However, on-site management of the mine remained the same. At the time of the acquisition, Nilsson was given a new employee handbook, which again contained a guarantee of fair treatment, almost identical to that in the ERC handbook, but which did not contain any disciplinary procedures or rules of conduct.

Nilsson's employment with MMC went well for several years. During this time, he was given average or better than average job evaluations by his supervisor, Talbott, and he received pay raises. Talbott described his working relationship with Nilsson as "congenial," stating that the two were "good friends as well as fellow employees." Nilsson agreed, stating that many times Talbott had told him he could work at the mine until he (Nilsson) retired. Nonetheless, Nilsson was fired in July, 1983, because, as Talbott testified, Nilsson's fellow employees had "lost confidence" in him. There was, in addition, a more specific allegation that Nilsson had frequently misappropriated mine property. Nilsson's termination was ordered by Talbott after consulting with William Cole, president of MMC.

After his dismissal, Nilsson filed this action, alleging age discrimination, breach of contract, and bad faith dealing. In an amended complaint, Nilsson named MAPCO–Nevada as the sole defendant. In response to Nilsson's complaint and amended complaint, MAPCO–Nevada admitted Nilsson's employment at the mine, but otherwise denied the remainder of Nilsson's allegations. The parties conducted discovery, and attended a pre-trial conference with the presiding district court judge. At that conference, the parties evidently stipulated that Nilsson was employed at the mine during the dates in question. Although the exact wording of the stipulation is not known, the court issued a "Pre-trial Conference Order," pursuant to I.R.C.P. 16(f). Under "Stipulations," the Order recited: "[f]acts admitted by all parties: (1) Plaintiff [Nilsson] was employed by defendant MAPCO May 21, 1979 to July 14, 1983. . . ." MAPCO–Nevada made no timely objection to this Order, as permitted by I.R.C.P. 16(g), but instead proceeded with the litigation. The trial was commenced six weeks later. After the jury had been selected, MAPCO–Nevada moved for its dismissal from the action. MAPCO–Nevada asserted that it was not involved in operation of the mine, and argued that the case should be dismissed because the wrong party was named as the defendant. The trial judge was unpersuaded by this argument, and held that MAPCO–Nevada would not be relieved from the pre-trial stipulation naming it as the party-defendant in this action. The trial proceeded, and the jury found by special verdict that MAPCO–Nevada was liable for wrongfully terminating Nilsson's employment. The jury awarded Nilsson $20,000 in damages. Judgment for that amount, together with costs, was entered accordingly. MAPCO–Nevada thereafter pursued this appeal.

I

*MAPCO–Nevada as Proper Defendant*

MAPCO–Nevada first argues that the trial court erred by failing to dismiss it as the defendant in this action. MAPCO–Nevada contends that it had nothing to do with the operation or management of the DeLamar mine during Nilsson's employment; that Nilsson was aware of this fact; and that there actually was no stipulation at the pre-trial conference that MAPCO–Nevada was the proper defendant.[1] Nilsson maintains that MAPCO–Nevada's defense on the merits, coupled with its failure to move for a dismissal under I.R.C.P. 12, its failure to join MAPCO–Delaware as an

---

1. Responding to Nilsson's complaint and amended complaint, MAPCO–Nevada had admitted that Nilsson was employed at the DeLamar Mine as maintenance superintendent, but "denied all other allegations" made. Evidently, the parties' pre-trial stipulation regarding Nilsson's employment simply reflected those averments in MAPCO–Nevada's answer.

indispensable party under I.R.C.P. 19, and its failure to make a timely objection to the pre-trial conference order under I.R.C.P. 16(g), should operate to estop MAPCO–Nevada from denying liability for the judgment.

We see no error in the trial judge's decision. I.R.C.P. 16(a) authorizes the trial court to conduct pre-trial conferences for the purpose of, among other things, expediting the disposition of cases before it. At the pre-trial conference, the parties are expected to stipulate to facts which are not in contention. To this end, the parties must fully disclose in good faith their contentions and the gist of the evidence expected to support those contentions. *Stevenson v. Steele*, 93 Idaho 4, 453 P.2d 819 (1969). Ordinarily, the parties are bound by these stipulations. *Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 655 P.2d 926 (1982); *Call v. Marler*, 89 Idaho 120, 403 P.2d 588 (1965); *see generally* Annotation, *Binding Effect of Court's Order Entered After Pretrial Conference*, 22 A.L.R.2d 15, § 2 (1952). Nonetheless, this process is to be administered fairly by the trial judge. *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985), *appeal after remand*, 112 Idaho 594, 733 P.2d 815 (Ct.App.1987). Amendments to pre-trial stipulations should be liberally granted in order to relieve a party from the effect of a stipulation if its enforcement would work a substantial injustice. *Stevenson v. Steele, supra.* Although the trial court may expedite justice, it must always do substantial justice. *Id.*

In this case, the trial judge recognized an inequity that would occur if MAPCO–Nevada was relieved from its stipulation. Nilsson had taken all steps necessary to ascertain the proper defendant. He apparently served a summons and complaint upon a registered agent of MAPCO, Incorporated. He then proceeded with discovery. In response, MAPCO–Nevada answered the complaint and amended complaint, responded to discovery pleadings, and entered into pre-trial stipulations, never once denying it was the proper defendant. It was not until the trial commenced

that MAPCO–Nevada specifically denied being the proper defendant. Although MAPCO–Nevada argues that Nilsson was aware of this apparent error beforehand, the trial judge evidently did not agree, and felt that it would be patently unfair to Nilsson to dismiss MAPCO–Nevada from the trial at such a late date. This was entirely within the court's discretion. *Cf. Fisher v. Crest Corp.*, 112 Idaho 741, 735 P.2d 1052 (Ct.App.1987) (default judgment granted despite flaw in service of process on corporation).

In addition, we are mindful that if MAPCO–Nevada had timely moved for a dismissal for lack of personal jurisdiction under I.R.C.P. 12(b)(2), (4), or (5), we would be compelled to determine whether or not the trial court had personal jurisdiction over the proper defendant. However, MAPCO–Nevada's failure to raise such a motion in its pleadings permits us to determine, under I.R.C.P. 4(i), whether it waived its defense by voluntarily appearing to defend this case on the merits. In such cases, we have determined that a "voluntary appearance" is evidenced by conduct which manifests the party's intent to defend the action. *Donaldson v. Donaldson*, 111 Idaho 951, 729 P.2d 426 (Ct.App.1986). In this case, MAPCO–Nevada showed such intent.

We therefore hold that because the trial judge did not abuse his discretion in failing to relieve MAPCO–Nevada from a pre-trial stipulation naming it as the defendant and that MAPCO–Nevada voluntarily appeared to defend this action on the merits, the trial judge did not err in denying MAPCO–Nevada's request to dismiss it as the defendant in this action.

## II

*Grounds for Wrongful Termination*

Second, MAPCO–Nevada argues that the trial court's special verdict is contrary to existing Idaho law. Specifically, it contends that Nilsson was an at-will employee because no written employment contract existed between the parties, and neither the ERC nor the MMC employee manual

**22**

was intended to establish contract terms. In addition, MAPCO–Nevada asserts that an at-will employment contract does not carry an implied covenant of good faith and fair dealing. In contrast, Nilsson maintains that this is not an at-will employment case. He submits that a combination of guarantees made to him by Talbott and Cole, along with provisions of the employee manuals given to him by ERC and MMC, created an employment contract. As a result, Nilsson contends that he was denied his contractual guarantees of fair treatment and protection in case of disciplinary measures, as well as being terminated for reasons not within the enumerated causes in his employee manual. In addition, Nilsson argues that an implied covenant of good faith and fair dealing existed in his working relationship with ERC and MMC.

MAPCO–Nevada's argument focuses on the jury's grounds for awarding Nilsson damages. At trial, the jury returned the following interrogatory in their special verdict:

We, the Jury, answer the questions submitted to us in the Special Verdict as follows:

QUESTION NO. 1: Did an express or implied contract *or* a duty to treat plaintiff in good faith and with fair dealing exist between plaintiff and defendant which limited the reasons for which plaintiff could be terminated?

ANSWER TO QUESTION NO. 1: Yes

(Emphasis added). As can be seen, this interrogatory combined two different grounds of liability, to which the jury gave a single answer of "Yes." Subsequent interrogatories failed to clarify which ground(s) of liability the jury had adopted.

Our law on at-will employment, employment contracts, and implied covenants of good faith and fair dealing in employment contracts is well settled. Unless an employee is hired pursuant to a contract which specifies the duration of employment, or limits the reasons why the employee may be discharged, the employment is "at-will;" either party may terminate the relationship at any time without incurring liability. *Holmes v. Union Oil Co. of Calif.*, 114 Idaho 773, 760 P.2d 1189 (Ct.App.1988); *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977). The only recognized exception to this rule is that an employee may claim damages for wrongful discharge when the motivation for firing contravenes public policy. *Id.* The at-will employment doctrine does not, however, rule out the existence of employment contracts. These contracts can be formed by either express or implied agreement. *See Arnold v. Diet Center Inc.*, 113 Idaho 581, 746 P.2d 1040 (Ct.App.1987).[2] Nevertheless, we have also decided that an implied covenant of good faith and fair dealing does not give rise to an independent ground of potential liability for wrongful discharge in all employment contracts. *Holmes v. Union Oil Co. of Calif., supra.* To create such an indepen-

**2.** An employment contract can be found by the trial court as a matter of law, *see Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632 (1986), or as a question of fact where the evidence is conflicting or the terms of the agreement are uncertain. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 679 P.2d 640 (1984). The finder of fact may glean proof of an employment contract from various sources: from the express terms or agreements between the parties, *see Harkness v. City of Burley*, 110 Idaho 353, 715 P.2d 1283 (1986) (city council resolution making plaintiff permanent employee probative of existence of a contract; claim dismissed on other grounds); from evidence of oral agreement, *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 715 P.2d 1017 (Ct.App. 1986) (oral employment contract established between parties), *affirmed with modifications*, 114 Idaho 628, 759 P.2d 919 (Ct.App.1988); or from the provisions of employee handbooks or manuals relating to grounds and procedures for dismissal. *Watson, supra.* In jury cases, we will not disturb the jury's determination where it is supported by substantial and competent, although conflicting, evidence. *Harmston v. Agro–West, Inc.*, 111 Idaho 814, 727 P.2d 1242 (Ct.App.1986). However, a discharged employee has the burden to prove that an employee manual or handbook is sufficient to establish an employment contract. The employee must show not only that the employer had promulgated general policies regarding the termination of employment and communicated them to its employees, but that the employee reasonably relied upon the statements in determining to remain in employment with the employer. *See Holmes v. Union Oil Co. of Calif., supra.*

dent ground in all cases would go beyond the public policy exception of the at-will doctrine, creating liability for termination of employees whose activities were not otherwise worthy of judicial protection. *Id.* However, we have suggested that a covenant of good faith and fair dealing may be implicated where the discharge is a product of bad faith directed personally at a particular employee. *Id.*, at 780, 760 P.2d at 1189. Of course, the trial judge in this case did not have the benefit of *Holmes* when he prepared his instructions.

We cannot be certain whether the jury found that an express or implied employment contract existed, or whether the jury found that MAPCO–Nevada had breached an implied covenant of good faith and fair dealing when it terminated Nilsson's employment. At trial, the judge refused to direct a verdict in favor of MAPCO–Nevada on Nilsson's claim of an implied covenant of good faith and fair dealing. Rather, the judge permitted the jury to determine whether the parties' dealings included such a covenant. That question was submitted to the jury by the following instructions:

### INSTRUCTION NO. 27

As to the alternative claim for breach of the duty of good faith and fair dealing, plaintiff has the burden of proving each of the following propositions:

1. That a contract of employment existed between the plaintiff and the defendant;

2. That the plaintiff's contract of employment imposed on each party a duty of good faith and fair dealing in its performance and its enforcement;

3. That the plaintiff was terminated in breach of the duty of good faith and fair dealing;

4. That plaintiff suffered damages proximately caused by the breach of the defendant; and

5. The elements of plaintiff's damages and the amount thereof.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proven, or has not been proven, then you should answer the Special Verdict form in accordance with those findings.

### INSTRUCTION No. 28

Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.

This requires neither party do anything that will injure the right of the other to receive the benefits of the agreement.

These instructions failed to apprise the jury that a covenant of good faith and fair dealing would not give rise to an independent ground of employer liability unless the employee showed that his discharge was a product of bad faith directed personally at him.

█ Taken as a whole, the instructions and special verdict on liability were ambiguous. MAPCO–Nevada could have been held liable under the theory of breach of an employment contract limiting the reasons for discharge, *or* under the theory that it breached an express or implied covenant of good faith and fair dealing when terminating Nilsson's employment. However, the instructions failed to inform the jury that a particularized showing of bad faith was requisite to finding a breach of a covenant of good faith and fair dealing. Without this determination, the jury could not properly hold MAPCO–Nevada liable under the covenant theory. Because of the wording of the special verdict interrogatory, we cannot be certain which ground(s) the jury chose.

Although the trial judge has broad discretion to determine the nature and scope of a special verdict, his inquiries must properly instruct the jury on the law relative to the issue at hand. *See* I.R.C.P. 49(a); *Garrett v. Nobles*, 102 Idaho 369, 630 P.2d 656 (1981). We therefore remand this case to the trial court for a new trial. At the new trial, if the court uses a special verdict form, it should instruct the jury separately—and obtain separate responses—on liability arising from breach of a contract which limits the reasons for discharge, and

on liability arising from bad faith which contravenes a covenant (whether express or implied) of good faith and fair dealing.

### Conclusion

We have considered MAPCO–Nevada's other issues, and find that they need not be addressed on this appeal. Accordingly, the judgment is vacated and the case is remanded for a new trial. No attorney fees on appeal. Costs to appellant, MAPCO–Nevada.

BURNETT and SWANSTROM, JJ., concur.