799 P.2d 70

**Peter P. SORENSEN,
Plaintiff-appellant,**

v.

**COMM TEK, INC., an Idaho corporation, Defendant-respondent.**

No. 17890.

Supreme Court of Idaho.

Oct. 1, 1990.

Rehearing Denied Oct. 1, 1990.

Lojek & Gabbert, Boise, for plaintiff-appellant. Donald W. Lojek argued.

Hogue, Speck & Aanestad, Ketchum, for defendant-respondent. Tracy Dunlap argued.

## SUBSTITUTE OPINION

The Court's prior opinion, dated May 22, 1990, is hereby withdrawn.

## ON DENIAL OF PETITION FOR REHEARING

BAKES, Chief Justice.

This is an appeal in an action claiming a wrongful termination and breach of em-

ployment contract. Plaintiff appeals the district court's order granting defendant's motion for summary judgment.

I

The record, viewed most favorably to the appellant, reveals the following facts. In July, 1984, plaintiff appellant Peter P. Sorensen was hired by defendant Comm Tek, Inc., a magazine publishing firm. Throughout his career at Comm Tek Sorensen was rated highly by his supervisors. During the spring of 1987, Comm Tek began shifting some of its Boise employees to the Washington, D.C., area (Vienna, Virginia) where it was relocating a major portion of its operations in conjunction with the launching of a new magazine for owners of satellite earth stations, or "dishes."

Sorensen alleges that on or about April 27, 1987, Comm Tek president David Wolford made an express contractual offer to him for a management position in the Vienna office. According to Sorensen, the oral offer contained an express promise that if Sorensen was not satisfied with the Vienna position he would be entitled to return to his Boise position. Sorensen then voiced concerns about the increased relative cost of living in the Washington, D.C., area as compared with Boise, education for his children, and the difficulty of selling his Boise home. Wolford, according to Sorensen, assured him that if he took the new position he would receive a cost-of-living increase and a raise and that the details would be worked out later. Wolford told Sorensen that he had 24 hours to decide and to let Pam Waite, a company vice president, know of his decision. Sorensen notified Waite the next day that he accepted the offer.

Sorensen alleged that almost two months passed from the time of Sorensen's acceptance and "the details" had not been worked out. Sorensen had been unsuccessful in his attempts to meet with Wolford in order to arrive at specific terms and conditions relating to the Vienna position. Waite and other Comm Tek officials suggested that Sorensen put a proposal in writing, which he did prior to leaving on a scheduled trip to the Washington, D.C., area to look for housing. Sorensen's June 15, 1987, "INTERNAL MEMO" listed his proposals regarding the move to the Washington, D.C., area, including a suggested salary increase.

On June 17, 1987 Sorensen arrived in Washington, D.C., checked into his hotel, and found a message instructing him to call the Boise office first thing in the morning. When Sorensen called he was informed that he was fired. According to Jan Bagby, Comm Tek's human resources officer, Wolford lost his temper after reviewing Sorensen's memo and decided to "make an example" of Sorensen by firing him even though other Comm Tek officials advised against this action. Attempts by company officials to persuade Wolford to let Sorensen keep his Boise position were likewise fruitless.

On February 16, 1988, Sorensen filed a complaint for breach of contract and wrongful termination by "breach of the covenant of good faith and fair dealing" alleging that Comm Tek "arbitrarily dismiss[ed] Plaintiff for exercising his right to negotiate terms of salary and working conditions ... in contravention of public policy." On August 10, 1988, Sorensen filed an amended complaint which further alleged promissory estoppel as a theory of recovery.

Comm Tek moved for summary judgment and on November 9, 1988, the district court granted this motion. In its decision, the district court concluded:

> ■ [I]t is clear that the plaintiff was an employee-at-will.... Nothing in the record shows that Comm [Tek] ever offered to limit the reasons for discharge of Mr. Sorensen ... nor to provide that he be employed for a specific period of time. Thus even under the most favorable view of the facts, there is no agreement which limits the reasons for which he may be discharged.... [2] While promissory estoppel would provide the necessary consideration for a contract, it will not supply the missing terms. The doctrine of promissory estoppel would not preclude the termination of Mr. Sorensen.

... [3] If there was an implied covenant of good faith and fair dealing in employment contracts, this Court would find that a jury issue remained and would deny summary judgment. However, Idaho law, including the recent pronouncements of the Supreme Court and the Court of Appeals, dictates that the only result can be arrived at in this case is to grant the defendant's motion for summary judgment in spite of what appears to be the unfairness of the procedure used in this case.

On appeal Sorensen contends that the district court erred when it concluded that neither the record nor the law would support the following theories of Sorensen's complaint: (1) breach of oral employment contract, (2) breach of a public policy exception to the employment-at-will doctrine, and (3) breach of an implied-in-law covenant of good faith and fair dealing. Sorensen does not appeal the district court's decision granting Comm Tek summary judgment on the promissory estoppel issue.

## II

We first address Sorensen's claim that the district court erred in granting summary judgment pursuant to I.R.C.P. 56(c) because there was sufficient admissible evidence in the record, when viewed in a light most favorable to the non-moving party, to show that a genuine issue of material fact exists concerning whether Comm Tek breached the alleged oral employment contract between himself and Comm Tek. Sorensen argues that the agreement he reached with Wolford on or about April 27, 1987, contained a specified duration on the length of his employment with Comm Tek and/or a limitation on the reasons for which Comm Tek could terminate him. Sorensen concludes that his previous at-will employment relationship with Comm Tek had been impliedly converted by the oral agreement into a contract with a term, and, as a result, Comm Tek wrongfully discharged him by dismissing him without good cause.[1]

This Court recently addressed the law applicable to claims involving the employment-at-will doctrine. In *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), we stated:

As the result of numerous decisions of this Court in recent years, it is now settled law in this state that:

"Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977)."

*Spero v. Lockwood, Inc.*, 111 Idaho [74, 75], 721 P.2d [174], 175 (1986). Thus, in the absence of an agreement between the employer and the employee limiting the employer's (or the employee's) right to terminate the contract at will, either party to the employment agreement may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985). However, such a limitation on the right of the employer (or the employee) to terminate the employment "can be express or implied." *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship-at-will had been limited by the implied-in-fact agreement of the parties. *See, e.g., Spero v. Lockwood, Inc.*, 111 Idaho 74, 721 P.2d 174

1. Comm Tek's employee manual contains a specific disclaimer defining its relationship with all employees as employment-at-will. As the district court noted, the manual provides, "COMMTEK MAY TERMINATE EMPLOYMENT FOR ANY REASON WHATSOEVER WITH OR WITHOUT CAUSE."

(1986); *Wagenseller v. Scottsdale Mem. Hospital,* 710 P.2d 1025, 1036 (Ariz.1985) (*en banc*) ("An implied-in-fact contract term ... is one that is inferred from the statements or conduct of the parties.") 1 A. Corbin, § 17, at 38 (1960).

*Metcalf v. Intermountain Gas Company,* 116 Idaho 622, 624, 778 P.2d 744, 746 (1989).

■ Sorensen claims that by accepting Comm Tek's offer for the Vienna job, with the understanding that if he were not satisfied with the new position he could return to his position in Boise, a new employment contract, or a modification of the previous employment-at-will relationship, was created. This contract, Sorensen alleges, impliedly limited Comm Tek's right to terminate him, at least between April 28, 1987, the date of acceptance, and August, 1987, the actual starting date for the new Vienna position. Sorensen has not asserted, however, that the new Vienna position was to be other than an employment-at-will relationship. Nor does Sorensen contend that the Boise position, if he chose to return to it, was to change from its previous character as that of employment-at-will. In essence then, Sorensen alleges that after he had accepted the oral contract offer for the Vienna position, and until he actually started in that position some three months later, Comm Tek could not discharge him without cause. This argument impliedly admits that Comm Tek could have done so, from either the Vienna or Boise positions, after August, 1987, because he was still an employee-at-will. As the district court correctly pointed out,

> [E]ven under the most favorable view of the facts, there is no agreement which *limits the reasons for which he may be discharged.* Under the circumstances, Mr. Sorensen could have been discharged in Boise, he could have been discharged the day after the move to Washington, D.C., and he could have been discharged, as he was, when he first arrived [on June 17, 1987,] in Washington, D.C., to carry out the move.

(Emphasis added.)

Under the most favorable view of the facts, there is no evidence in the record which supports the claim that Comm Tek impliedly agreed to limit the reasons for discharging Sorensen from his Boise position during the approximately three-month period from the time of Sorensen's acceptance of the Vienna position to the time he actually was to start work in Vienna. In light of the fact that (1) Sorensen acknowledged that the Boise position was an employment-at-will relationship, as is confirmed by the disclaimer in the employee manual, and (2) that Sorensen does not suggest that the new Vienna position or the Boise position, if returned to, were to be other than employment-at-will relationships, the district court's ruling was not erroneous. *Metcalf v. Intermountain Gas Company,* 116 Idaho 622, 778 P.2d 744 (1989).

■ At oral argument on appeal Sorensen appears to argue, for the first time, that Comm Tek breached an implied contractual agreement not to discharge him without notice and an opportunity to be heard. Sorensen claims that the company employment manual provides employees with the protection of notice and a hearing before discharge. However, Sorensen's amended complaint contained no allegation or claim that such contractual duty was owed to him by Comm Tek. Furthermore, while portions of the employment manual were apparently presented to the district court, and incorporated into its opinion, the employment manual as such is not in the record on appeal. Accordingly, there is nothing to support Sorensen's belated claim that Comm Tek owed Sorensen a duty under the employment manual to provide him with notice and a hearing before discharging him. In fact, the portion of the employment manual, quoted by the trial court, disclaims any such contractual right:

> None of the benefits or policies in this handbook are intended by reason of their publication to confer any rights or privileges or entitled you to be or remain an employee of Commtek. The contents of this handbook are presented as a matter of information only. While Commtek believes wholeheartedly in the plans, poli-

cies, and procedures described herein, they are not conditions of employment and are subject to unilateral change by Commtek. While we hope that your employment will be long lasting, employees are, of course, free to resign at any time just as Commtek is free to terminate your employment at any time.

Accordingly, we affirm the district court's order granting summary judgment to Comm Tek on Sorensen's claim for breach of an oral employment contract.[2]

### III

We next turn to Sorensen's contention that the district court erroneously granted Comm Tek's summary judgment motion with respect to his claim for breach of the public policy exception to the employment-at-will doctrine. Sorensen argues that regardless of whether an oral employment existed, Comm Tek violated public policy by discharging an employee (1) who negotiates employment conditions in good faith and/or (2) because of that employee's religious beliefs.

Regarding the claim of a public policy implied-in-law covenant in employment contracts, this Court held that:

> [T]he only general exception to the [employment-at-will doctrine] is that an employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy. *Jackson [v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977)].

*MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 589, 701 P.2d 208, 209 (1985).

> The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges. *Staggie v. Idaho Falls Consolidated Hospi-*

*tals, Inc.,* 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986). *Cf. Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee discharged for refusing to commit perjury); *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425 (1973) (employee discharged for filing worker's compensation claim); *Monge v. Beebe Rubber Company,* 114 N.H. 130, 316 A.2d 549 (1974) (employee discharged for refusing to "date" her supervisor); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving on jury duty).

*Anderson v. Farm Bureau Mutual Insurance Company of Idaho,* 112 Idaho 461, 469, 732 P.2d 699, 707 (Ct.App.1987). *See, Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977).

■ Sorensen claims that it is against public policy to offer an employee a new employment position with the understanding that the terms of the new employment position would be negotiated in the future, and then discharge the employee for attempting to negotiate. The claim that failure to negotiate is a violation of public policy, in the absence of a statute requiring employers to bargain with employees, is not supported by our prior cases. *See, e.g., Metcalf v. Intermountain Gas Company,* 116 Idaho 622, 778 P.2d 744 (1989); *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977); *Anderson v. Farm Bureau Mutual Insurance Company of Idaho,* 112 Idaho 461, 732 P.2d 699, (Ct.App.1987); *Staggie v. Idaho Falls Consolidated Hospitals, Inc.,* 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986). Accordingly, the district court did not err in granting summary judgment to Comm Tek on Sorensen's claim of breach of public

---

2. There was evidence in the record which indicated that in the past it had been the company practice or procedure for Wolford to consult with other company officers who supervised employees whose employment was being terminated, and that employees were given performance reviews and hearings before they were terminated. Sally Von Bargen, who was Soren-

sen's immediate supervisor, testified by deposition that those usual procedures "were not followed" in Sorensen's case. Nevertheless, the district court recognized that the employment manual specifically provided that those procedures "are not conditions of employment and are subject to unilateral change by Comm Tek."

policy by discharging an employee who attempts to negotiate.

■ On appeal Sorensen also claims that Comm Tek breached the public policy exception to the employment-at-will doctrine by discharging him because of his religious beliefs. Sorensen points to references in affidavits and depositions which indicate that on several occasions prior to the discharge Wolford made disparaging remarks about Sorensen's religious beliefs. Sorensen contends that his discharge was implicitly motivated, at least in part, by Wolford's contempt for Sorensen's religion. However, Sorensen's amended complaint makes no allegation of a connection between Wolford's attitude toward Sorensen's religious beliefs and his discharge. Sorensen's breach of public policy claim in his complaint states only that "Defendant's actions in arbitrarily dismissing Plaintiff for exercising his right to negotiate terms of salary and working conditions was in contravention of public policy." The only reason which any witness attributed to Wolford in firing Sorensen was that Wolford was upset with Sorensen's attempt to negotiate too favorable terms for the new position in Vienna, and that Wolford fired Sorensen to "make an example" of him to the other employees yet to be transferred to Vienna so that they would not make expensive salary increase demands on him. Accordingly, we need not determine today whether it is a violation of public policy to discharge an employee based on his or her religious beliefs. That issue is not before us. The district court did not err in granting Comm Tek's motion for summary judgment on Sorensen's claim for breach of the public policy exception to the employment-at-will doctrine.

IV

Finally, Sorensen contends that the district court erroneously granted summary judgment to Comm Tek on his claim for breach of an implied-in-law covenant of good faith and fair dealing. At the time of its order granting summary judgment on November 9, 1988, the district court correctly observed: "[T]he Idaho courts have been unwilling to extend the protections of the implied covenant of good faith and fair dealing to employment-at-will contracts and have excluded this particular species of contract from the protection of the doctrine." This changed, however, on August 8, 1989, when this Court for the first time adopted the implied-in-law covenant of good faith and fair dealing in an employment-at-will relationship. *Metcalf v. Intermountain Gas Company*, 116 Idaho 622, 778 P.2d 744 (1989). In *Metcalf* we held that "[a]ny action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant." 116 Idaho at 627, 778 P.2d at 749. The Court's opinion "recognize[d] that our decision today [was] a departure from prior law," and the plurality opinion concluded that it should only be applied "prospectively to breaches or violations of the covenant occurring after the effective date of this opinion. . . ." 116 Idaho at 628, 778 P.2d at 750.

■ The conclusion that the *Metcalf* opinion should only be applied prospectively was only joined in by two justices. A majority of this Court now concludes that the *Metcalf* opinion should be applied to all cases which had been filed at the time that the *Metcalf* opinion was issued on August 8, 1989. Sorensen filed his notice of appeal on December 19, 1988, and therefore this appeal was pending in this Court when the *Metcalf* decision was handed down on August 8, 1989. Accordingly, the district court's order granting summary judgment dismissing Sorensen's claim for breach of the implied covenant of good faith and fair dealing, as adopted in our decision in *Metcalf v. Intermountain Gas Co., supra*, is vacated and the cause remanded to the district court for further proceedings on Sorensen's claim of breach of the implied covenant of good faith and fair dealing as established in *Metcalf*.

The summary judgment of the district court is affirmed as to all of the claims in Sorensen's complaint, except Sorensen's claim that CommTek breached an implied covenant of good faith and fair dealing.

As to that claim, the summary judgment of the district court is vacated and the cause remanded for further proceedings consistent with our decision in *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), which we reaffirm today, except as to that part of our *Metcalf* opinion making the decision prospective only. No costs or attorney fees awarded.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, concurs in part and dissents in part.

I applaud the Court's reassessment of the *Metcalf* "prospective only" ruling. No rational reason prevents or limits the application of an implied covenant of good faith and fair dealing to employment contracts. Although our initial opinion for the Court denied Sorensen all relief, today's modification does provide Sorensen his day in court and justice may be done.

The decision to apply *Metcalf* to all cases which had been filed when *Metcalf* was decided, and of course to all new appeals, is appropriate for two reasons. Where two or more plaintiffs have initiated actions which are similarly premised and one is decided by an appellate court whereas the other has been delayed en route, there is no sound reason for denying the other case the benefit of a new rule of law simply because of the happenstance of being second in time. *See State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980) (the Court, over Bistline, J.'s objection, refused on rehearing to apply the holding of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in which a certain jury instruction was disapproved. Bistline, J., dissented, and quoted from *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977)). In *Hankerson v. North Carolina*, Justice Powell wrote:

> When the Court declines to hold a new ... rule retroactive, one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine. This hardly comports with the ideal of 'administration of justice with an even hand.' *Desist v. United States*, [394 U.S. 244, 255, 89 S.Ct. 1030, 1037, 22 L.Ed.2d 248 (1969) ] (Douglas, J. dissenting).

*Hankerson*, 432 U.S. at 248, 97 S.Ct. at 2347 (Powell, J., concurring in the judgment) (footnote omitted).

Second, the Court of Appeals had recognized actions for discharge motivated by bad faith long before *Metcalf* was written. Actions for bad faith necessarily implicate an implied or express covenant of good faith and fair dealing. So, unless this Court has expressly overruled these Court of Appeals holdings, a *Metcalf* prospective-only rule would have produced a contradictory split between the two appellate courts.

In *Holmes v. Union Oil Co. of California*, 114 Idaho 773, 760 P.2d 1189 (Ct.App. 1988), *review denied* 1988, the Court of Appeals, on the ground that a material issue of fact remained, reversed the grant of summary judgment to the employer. The Court of Appeals realized that the terms and duration of the employment relationship were unclear, and as yet undefined by a trier of fact, and thus precluded summary judgment disposition of the matter. *Holmes* also recognized that where a covenant of good faith and fair dealing exists, liability will attach where one party acting in bad faith contravenes the covenant.

*Holmes* was later interpreted by the Court of Appeals to hold that "a covenant of good faith and fair dealing may be implicated where the discharge is a product of bad faith directed personally at a particular employee." *Nilsson v. MAPCO*, 115 Idaho 18, 23, 764 P.2d 95, 100 (Ct.App.1988), citing with approval to *Holmes*. A new trial was ordered in *Nilsson* because the jury instructions "failed to apprise the jury that a covenant of good faith and fair dealing would not give rise to an independent ground of employer liability unless the em-

ployee showed that his discharge was a product of bad faith directed personally at him." *Id.* By lifting the restriction on the *Metcalf* holding this Court properly aligns the precedent of this Court and the Court of Appeals.

I dissent from the majority opinion only in regard to one narrow facet. Unlike the majority, I am not presently convinced that the relationship under scrutiny here is an employment-at-will relationship. The majority opinion, by affirming the district court's grant of summary judgment as to the nature of the employment contract, affirms the district court in not letting a jury serve as the trier of fact, even though the material terms of the employment relationship are unclear. If the employee was required to give notice, no reason surfaces why the employer should not also provide the employee with notice that the relationship will be terminated.

The Idaho case law precedent existing at the time this action accrued provided that in employment-at-will relationships both the employer and the employee may terminate the relationship at any time without cause. The reciprocity of this relationship was recognized by the Court of Appeals: "Employment at will may be terminated by either party for any reason without liability, except that an employee may not be discharged for a reason contravening public policy." *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 348, 715 P.2d 1017, 1018 (Ct.App.1986) (citation omitted), *affirmed with modifications*, 114 Idaho 628, 759 P.2d 919 (Ct.App.1988). In *Metcalf*, a majority of this Court wrote that:

> [I]n the absence of an agreement between the employer and the employee limiting the employer's (or the employee's) right to terminate the contract at will, either party to the employment agreement may terminate the relationship at any time or for any reason without incurring liability. [Citation omitted.] However, such a limitation on the right of the employer (or the employee) to terminate the employment relationship 'can be express or implied.' [Citation

> omitted.] A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship-at-will had been limited by the implied-in-fact agreement of the parties. [Citations omitted.]

*Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 624, 778 P.2d 744, 746 (1989).

*Metcalf* also recognized that employment handbooks and manuals serve to provide evidence of the terms of the employment relationship. Here, the employment manual explicitly destroyed the reciprocity of the relationship between the employee and employer. As the district court took pains to observe:

> Commtek had a Practices and Procedures Manual which, while it set forth a procedure for disciplinary action, also provided in several places that all employees were terminable at will. See: 'Termination of Employment,' Practices and Procedures Manual, pages 11, 12, 23. The Manual provides: 'COMMTEK MAY TERMINATE EMPLOYMENT FOR ANY REASON WHATSOEVER WITH OR WITHOUT CAUSE.' While the Manual imposes a notice of intent to resign requirement on the employees, no similar restriction is imposed upon Commtek.

R. 63–4. Clearly, the employee's right to terminate at will was severely limited, if not obliterated, by the employment manual, while the employer's right remained unfettered. Without requisite reciprocity to terminate at will, there surfaces the question whether this relationship truly was terminable-at-will employment. That issue ordinarily is left to a jury; it is an issue of fact that will ultimately be determined by considering and resolving conflicting evidence. As the Court of Appeals has recognized, when the terms of an employment relationship are unclear, and the evidence is conflicting or uncertain, then it is for the jury to determine the parameters of the employment relationship, absent a waiver of jury trial. *See Nilsson v. MAPCO*, 115 Idaho 18, 22 n. 2, 764 P.2d 95, 99 (Ct.App.1988).

For the reasons stated above, I would remand this case for trial both as to the express or implied covenant of good faith and fair dealing, and as to the nature of the relationship that existed between Sorensen and his employer.